362 So.2d 1101 (1978)
Michael N. SMITH
v.
DIVISION OF ADMINISTRATION.
No. 61639.
Supreme Court of Louisiana.
September 5, 1978.
Rehearing Denied October 5, 1978.
*1102 Phil E. Miley, Division of Administration, Baton Rouge, William D. Brown, Brown, Wicker & Lee, Monroe, for defendant-respondent.
R. Gray Sexton, Baton Rouge, State Dept. of Civil Service, Intervenor, applicant for Dept. of Civil Service Com.
Marian Mayer Berkett, Moise W. Dennery, William B. Dreux, Thomas B. Lemann, Charles J. Rivet, New Orleans, amicus curiae for Civil Service League.
CALOGERO, Justice.
We granted writs in this case upon application of the Department of Civil Service, State of Louisiana to review a decision of the Court of Appeal, First Circuit on an appeal from an order from the State Civil Service Commission. Smith v. Division of Administration, 358 So.2d 1291 (La.App. 1st Cir. 1978).
The issue in this litigation is whether the plaintiff, Michael N. Smith, an EDP Programmer III in the Division of Administration, is or was a classified employee of the state. Smith, who purportedly was in the classified service with permanent status, was notified by letter that his employment would be terminated as of April 26, 1976. He appealed the dismissal to the Director of the Department of Civil Service. The Civil Service Commission on initial review ruled that the attempted discharge was ineffective and that Smith was to be returned to the status he had had on April 26, 1976, the date of the attempted discharge. Because the ruling was unclear about Smith's entitlement to back pay, neither he nor the Division of Administration accepted it as conclusive. The appeal was then reinstituted on the request of Smith and the Division of Administration, and a referee was appointed. While that proceeding was under advisement, the First Circuit Court of Appeal on February 14, 1977 rendered its decision in In Re Division of Administration, 343 So.2d 277 (La.App. 1st Cir. 1977). Citing that decision and this Court's refusal to grant writs in that case, the Civil Service Commission ex propio motu, dismissed Smith's appeal.
Adequate consideration of the issue in this case requires a brief discussion of In Re Division of Administration, supra. On September 11, 1975, the Civil Service Commission adopted a resolution calling a public hearing to investigate whether twenty unclassified employees of the Division of Administration had been employed in violation of state civil service laws. Following an evidentiary hearing, the Commission concluded that the Division of Administration was subject to the state's civil service laws and directed the division to bring all its employees, particularly the twenty whose employment prompted the investigation, into the classified service. The ruling did not affect the division's appointed head nor the two unclassified positions permitted by civil service law. The Division of Administration appealed to the First Circuit which reversed that ruling. The First Circuit concluded that the Civil Service Commission was without jurisdiction to review the employment practices of the Division of Administration because the Division of Administration is part of the "office of the governor" within the meaning of Article 10, § 2 of the Louisiana Constitution of 1974. The Department of Civil Service and the Louisiana Civil Service Commission sought writs from that decision. Writs were denied May 11, 1976. 345 So.2d 504 (La.1977).
*1103 After the Civil Service Commission's dismissal based on In Re Division of Administration Smith appealed to the First Circuit Court of Appeal. The Department of State Civil Service, pursuant to Louisiana Revised Statute 13:3417,[1] intervened. The Division of Administration opposed the order of intervention on the grounds that this Court's denial of writs in In Re Division of Administration precluded the Civil Service Commission's relitigation of the issue. The motion in opposition was denied and the intervention permitted. On December 14, 1977, the morning the case was set for argument, Smith and the Division of Administration filed a motion to dismiss the appeal for the reason that the parties had settled the case. The Department of Civil Service, however, did not join in the motion and in fact opposed the dismissal. The Court of Appeal took the motion under advisement and on January 23, 1978, denied the motion to dismiss; on the merits, however, the court affirmed the Civil Service Commission's dismissal of Smith's appeal. The Department of Civil Service applied for writs which were granted. 359 So.2d 994 (La.1978).
The question of whether the Division of Administration is part of the "office of the governor" within the meaning of Article 10, § 2 of the Louisiana Constitution of 1974 which would place its employees in the unclassified service is the same question raised in In Re Division of Administration. The fact that writs were denied in In Re Division of Administration[2] does not as the defendant argues preclude this Court from reviewing the Court of Appeal's decision in this case. This Court's denial of a writ is not an adjudication on the merits of a case.[3]See Day et al v. Campbell Grosjean Roofing and Sheet Metal Corporation, et al 260 La. 325, 256 So.2d 105 (1971). Consequently, the question of whether the employees of the Division of Administration are in the classified service is one of first impression for this Court.
The Division of Administration was created by Act 133 of 1948, Title I, section 1 which provided:
"Division of Administration: Be it enacted by the Legislature of Louisiana, that a Division of Administration whose employees shall be employees of the Office of the Governor is hereby constituted and created as a Division of the Office of the Governor, and shall hereafter exercise those powers and functions as hereinafter set forth and as may be further provided by law."
When the Division of Administration was organized, the Department of Finance was abolished and its employees, who were in the classified service, were transferred to the Division of Administration. The 1948 act subsequently became R.S. 39:1 which was amended in 1952 to add a budget office in the "office of the governor."
On May 11, 1953, the State Civil Service Commission ruled that employees of the Division of Administration, the Budget Office, and the Division of State Building were not in the office of the governor within the meaning of the 1952 Civil Service Amendment. Throughout this period, the employees of the Division of Administration remained in the classified service. Apparently recognizing this situation, the legislature by Act 42 of 1956, section 1 amended R.S. 39:1 to delete the subsection added in 1952 and the words "shall be the employees *1104 of the office of the governor." As so amended R.S. 39:1 reads as follows:
"A. A division of administration is hereby created as a division of the office of the governor, and shall exercise those powers and functions as hereinafter set forth and as may be further provided by law." (Emphasis added.)
After the question of the status of the Division of Administration's employees was again raised in the Civil Service Commission's hearings in the In Re Division of Administration matter, the 1976 legislature in House Concurrent Resolution 264 declared that it "is and always has been" the legislature's intent that the Division of Administration be a part of the "office of the governor" and by inference that the employees be unclassified:
"WHEREAS, it is recognized that a ruling of the State Civil Service Commission did not recognize that the division is an integral part of the office of the Governor, that the division is entirely under the supervision, control, and direction of the Governor, that the division performs essential governmental duties imposed directly upon the governor and delegated by him to the division, and that the ruling by the State Civil Service Commission placing the employees of the division in the classified service has incorrectly interpreted the intent of the legislature evidenced by the wording of the statutes and the constitutional provisions from the time the division was created up to the present.
"THEREFORE, BE IT RESOLVED by the House of Representatives of the Legislature of Louisiana, the Senate thereof concurring, that the Legislature hereby goes on record that the intent and purpose of the Legislature is and always has been that the Division of Administration is a division of the office of the Governor, and as such is an integral part of his staff, performing essential constitutional and statutory functions for the Governor as the chief executive officer of the state, under his control, and that officers and employees of the Division of Administration are officers and employees of the office of the Governor."
The Court of Appeal in In Re Division of Administration relied heavily on the legislative intent announced in House Concurrent Resolution 264.
To resolve the question presented in this case, we must examine the constitutional provision here at issue. Louisiana Constitution of 1974 Article 10, § 2 divides state and city service into classified and unclassified. Article 10, § 2 provides in pertinent part:
(A) Classified Service. The state and city civil service is divided into the unclassified and the classified service. Persons not included in the unclassified service are in the classified service.
(B) Unclassified Service. The unclassified service shall include the following officers and employees in the state and city civil service.
. . . . .
(10) employees, deputies, and officers of the legislature and of the offices of the governor, lieutenant governor, attorney general, each mayor and city attorney, of police juries, school boards, assessors, and of all offices provided for in Article V of this constitution except the offices of clerk of the municipal and traffic courts in New Orleans;
While it is true that the Division of Administration, whether by transfer[4] or creation[5] is a division of the "office of the governor" and its employees, at least prior to the 1956 amendment of R.S. 39:1, have been legislatively designated "employees of the office of the governor," these facts do *1105 not resolve the issue before us. To resolve this issue, we must determine the meaning of the language "office of the governor" in the Constitution of 1974.
The phrase "office of the governor" has at least two possible interpretations: It could refer to the concept of power vested in the governor or to the individual who holds the elective office. If it is the former, the employees of the Division of Administration are employees of the "office of the governor" and unclassified. If it is the latter, the employees of the Division of Administration are not in the "office of the governor."
Helpful in resolving this ambiguity are the following: 1) the opinion of the Court in State ex rel Murtagh v. Department of City Civil Service, 215 La. 1007, 42 So.2d 65 (1949), 2) the contemporaneous construction or long standing interpretation placed upon the law by administrative officers charged with its execution and enforcement, and 3) the 1974 constitutional debates.

1. The Murtagh Decision
In State ex rel Murtagh v. Department of City Civil Service a clerk employed by the City of New Orleans in the Permit Division was discharged by the Mayor. He appealed the dismissal to the Civil Service Commission of New Orleans which held that the clerk was an unclassified employee, outside the protection of civil service. In determining whether Murtagh was a classified or unclassified employee, this Court found that the fact that the power to issue permits and to hire employees necessary for the proper conduct of the Permit Division was vested in the Mayor did not render the employees of the Permit Division "employees of the Mayor" and therefore unclassified. This Court interpreted the phrase "employees of the Mayor" to include only those employees "generally accepted as the office force of Mayor and not employees of other departments placed under his supervision." The thrust of the Murtagh opinion was that only the personal staff of the Mayor, his "retinue," was intended by the phrase.
Almost as if anticipating the argument made here by defendants, the Court in Murtagh said:
"If this conclusion [the conclusion that if the Mayor is responsible for the job, then the employees who do the job must be unclassified] is sound, the Commission Council merely by ordinance, may and can declassify almost any classified employment by the simple expedient of placing such employment under the Mayor's office."

2. Contemporaneous Construction
Since the "creation" of the Division of Administration in 1948, its employees have continuously been treated as classified employees. Despite the Civil Service Amendment adopted in 1952, which listed as part of the unclassified service employees of the "offices of the Governor," the State Civil Service Commission in 1953 ruled that the Division of Administration was not in the office of the governor within the meaning of the constitutional amendment. Apparently accepting the Civil Service Commission's interpretation, the legislature in Act 42 of 1956 deleted from Act 133 of 1948, by then R.S. 39:1, the words "whose employees shall be employees of the office of the Governor." W. W. McDougall, Director of the Department of State Civil Service from March 1, 1953 to November, 1968, testified at the hearing conducted to investigate possible violations of civil service law by the Division of Administration that the Division of Administration had consistently not been considered a "part of the Governor's office" and that its employees were considered in the classified service.[6] The construction placed by the Civil Service Commission has been accepted by every Governor and Commissioner of Administration, including the present one, since that ruling.
It is in this context that we view the proceedings of the Constitutional Convention *1106 of 1973 and the perpetuation of the language, "office of the governor," in the 1974 Constitution.

3. Proceedings of the 1973 Constitutional Convention
A review of the proceedings of the 1973 Constitutional Convention, particularly the debates, makes it evident that no change was intended from the prior civil service provisions in the Constitution nor in their interpretations. That convention did not expand, contract or otherwise modify the concept of "office of the governor." Rather, the convention re-enacted the precise term which had been included in the former constitution which had been subject to judicial scrutiny and interpretation in such cases as Murtagh.
The following colloquy took place on the 94th day of the 1973 convention proceedings:
"Mr. Henry:
Would you yield to a question from Mr. Stagg
Mr. Dennery:
Yes, sir.
Mr. Stagg:
Mr. Dennery, in the bottom of page 1 and the top of page 2, there is a considerable listing of people who are exempt or are not under the classified service. In about line 12, it mentions the offices of the governor. If I'm not too far wrong on my facts here, in recent months, the Centrex operators were changed from, I think, classified service, to be a part of the Division of Administration. I believe in addition to that, the guards out here on the parking lot may have similarly, or some other groups of employees were moved to the Division of Administration and therefore, I presume, out from under the classified service.

When you say here simply, `the office of the governor,' how far does that extend and what is the ability of the governor to move people who are protected by being classified employees and shoved over into unclassified positions, and, thereby, able to be fired without cause.
Mr. Dennery:
Mr. Stagg, the only way I can answer that question is to refer you to a case in New Orleans many years ago when the mayor of the city at that time did exactly what you suggest could be done. The court slapped him down and said you could not enlarge `the office of the governor' by taking in extraneous divisions and say they are part of his office. It means the office of the governor in a normal sense of the word." (Emphasis added) XXXI Constitutional Convention of 1973, Verbatim Transcripts, December 7, 1973, p. 74.
Confronted with the task of interpreting and applying Constitutional language ("employees. . . of the office of the governor"), the Court of Appeal in In Re Division of Administration and in this case, indirectly, relied in large measure upon the Legislature's intent when it created the Division of Administration in 1948 and upon the 1976 Legislature's expression of the intent and purpose of the 1948 legislation.[7] That reliance is not well-placed. The function of interpreting laws, and even more so constitutional provisions, is not legislative but judicial. In State Licensing Board for Contractors v. State Civil Service Commission, 240 La. 331, 123 So.2d 76 (1960) a case similar to the one at hand, the Legislature adopted a resolution, just as the Legislature has done in this case, stating that it was its intention in the 1956 act which created the State Licensing Board not to place its employees in the classified service of the state. Rejecting the legislative intent expressed in that resolution, this Court stated:
"To interpret laws is not a legislative, but a judicial function, and this fundamental rule of constitutional law has not only been uniformly observed in the pronouncements of the courts of this State, but has been enunciated by the highest tribunals in numerous other states of the union (citations omitted); and the rationale of the principle, based on separation *1107 of powers, is more compelling when, as in the case at bar, the earlier enactment is not couched in doubtful phraseology and is at the time of the Legislature's declaration of intent involved in litigation." (Emphasis added)
Even if the Legislature in 1948 did intend, as the 1976 Legislature proclaimed, that the employees of the Division of Administration be in the unclassified service, such intention is irrelevant. The status of the employees of the Division of Administration is governed by the Constitution and the appropriate judicial interpretation of the Constitutional language "employees. . . of the office of the governor." While those employees may organizationally[8] and functionally[9] be under or within that segment of state government designated "office of the governor," they are not employees of the office of the governor within the meaning of Article 10, § 2(B)(10) of the Louisiana Constitution of 1974, that is, employees in the office of the person elected governor of the State of Louisiana.

Decree
For the foregoing reasons, the ruling of the Court of Appeal denying the motion to dismiss filed by plaintiff Smith and defendant Division of Administration is affirmed; the ruling and holding of the Court of Appeal in affirming the Civil Service Commission's dismissal of Smith's appeal (in reliance upon In Re Division of Administration, 343 So.2d 277 (La.App. 1st Cir. 1977)) is reversed. Judgment is entered herein in favor of the intervenor, Department of State Civil Service, declaring employees of the Division of Administration (with the exception of its appointed head, and those occupying the unclassified positions permitted by Civil Service Law) classified employees of the State of Louisiana under Article 10, § 2(A) of the Louisiana Constitution of 1974.
AFFIRMED IN PART, REVERSED IN PART.
NOTES
[1] R.S. 13:3417 provides:

In any judicial proceeding involving an interpretation of or decision under any provision of Article XIV, Section 15 of the Constitution of Louisiana in which a director of personnel functioning thereunder is not an indispensable party, the director may be made a party thereto at any stage of the proceeding on his own motion or by motion of an indispensable party. Directors made parties to such proceedings shall possess all of the rights afforded to parties in litigation by the laws of this state including the right to appeal and to apply for and obtain writs from the courts of the state.
[2] As presented the question in that writ application appeared to relate to just twenty positions. That opinion, however, now seems to affect the over one thousand employees presently employed by the Division of Administration.
[3] See also Barham, "The Importance of Writ Denial" 21 Loy. L.Rev. 835 (1975).
[4] The Division of Administration was first formed as a reorganization of the Department of Finance by Act 133 of the 1948 regular legislative session and employees of that Department of Finance were transferred to the Division of Administration.
[5] The 1948 Act referred to at footnote 4 hereinabove and Act 58 of 1952, a subsequent reorganization, specifically provided that: "a Division of Administration whose employees shall be employees of the office of the Governor is hereby created as a division of the office of the governor . . ."
[6] Transcript of the hearings held into possible violations of the Division of Administration, February 11, 1976.
[7] House Concurrent Resolution 264 of the 1976 regular session, supra.
[8] See Executive Reorganization Act, 513 of 1976, R.S. 36:1 et seq.
[9] Under R.S. 39:4, most functions of the Division of Administration are duties conferred upon the Governor by either the Constitution or Legislative act.