# STATE OF LOUISIANA

# COURT OF APPEAL, THIRD CIRCUIT

## 13-701

CIVIL SERVICE COMMISSION FOR
THE CITY OF OPELOUSAS

VERSUS

CITY OF OPELOUSAS, THROUGH ITS
MAYOR, DONALD CRAVINS, SR., AND
THE APPOINTING AUTHORITY, THE
BOARD OF ALDERMEN, ET AL.

**********

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, DOCKET NO. 11-C-5722-A
HONORABLE JAMES P. DOHERTY, JR., DISTRICT JUDGE

**********

JAMES T. GENOVESE
JUDGE

**********

Court composed of Sylvia R. Cooks, Jimmie C. Peters, and James T. Genovese,
Judges.

**AFFIRMED.**

Eric LaFleur
J. Gregory Vidrine
Mahtook & LaFleur
Post Office Box 617
Ville Platte, Louisiana 70586
(337) 363-6211
COUNSEL FOR DEFENDANTS/APPELLANTS:
    The City of Opelousas, Roger Brown, George Gennuso,
    Delores Guillory, and Eva Noel

**Christine Mire Matherne**
**Williams & Associates Law Firm**
**Post Office Box 54024**
**Lafayette, Louisiana  70505-4024**
**COUNSEL FOR DEFENDANTS/APPELLANTS:**
      **Roger Brown, George Gennuso,**
      **Delores Guillory, and Eva Noel**

**Jerry J. Falgoust**
**Falgoust, Caviness, & Bienvenu, LLP**
**Post Office Box 1450**
**Opelousas, Louisiana  70571-1450**
**(337) 942-5812**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
      **Civil Service Commission for the City of Opelousas**

**GENOVESE, Judge.**

Defendants, Roger Brown, George Gennuso, Delores Guillory, and Eva Noel, appeal the trial court's ruling relative to their status as classified employees subject to the rules and regulations of the Civil Service Commission for the City of Opelousas. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In December 2011, the Civil Service Commission for the City of Opelousas (Civil Service Commission) filed a Petition for Declaratory Judgment naming as defendants: (1) the City of Opelousas through its Mayor, Donald Cravins, Sr.; (2) the City's seven aldermen; and, (3) thirty-three[1] of the City's employees. The Civil Service Commission alleged that the employees were hired in violation of its rules and regulations. Its petition requested: (1) a declaration from the trial court "that all personnel of the **CITY OF OPELOUSAS** are members of the classified service of the **CITY OF OPELOUSAS** except those which are specifically excluded by the August 12, 1961 Opelousas Ordinance and/or Article 10, Section 2 of the 1974 Louisiana Constitution;" (2) a declaration from the City of Opelousas "under what authority [the employees] were hired in an unclassified position;" (3) a declaration from the trial court "as to what positions, if any, are considered a head of a 'principal executive department' and are to be excluded from the Opelousas Civil Service;" and, (4) an order from the trial court for "those employees hired as unclassified to apply for their positions with the **CIVIL SERVICE COMMISSION FOR THE CITY OF OPELOUSAS**."

---

[1]Originally, twenty-nine employees were named as defendants. Four additional employees were added as defendants via an amended petition filed in March 2012.

A two-day bench trial was held, after which the trial court took the matter under advisement and issued Reasons for Judgment. On April 9, 2013, the trial court signed a judgment declaring that seventeen[2] of the thirty-three employees named as defendants, including Roger Brown, George Gennuso, Delores Guillory, and Eva Noel, were classified employees subject to the rules and regulations of the Civil Service Commission for the City of Opelousas. This appeal by the four above-mentioned Defendants followed.

## ASSIGNMENT OF ERROR

Appellants assert one assignment of error: the trial court "erred in finding that [they] were not properly employed within the City's unclassified service." Roger Brown contends that "as the head of a principal executive department unanimously established by the Board of Aldermen at their January 2011 regular meeting, [he] falls into the unclassified service as dictated by Article 10, § 2 of the 1974 Constitution." It is George Gennuso's argument that he "serves as the principal assistant and/or confidential position holder to a principal executive department head (Roger Brown), and, as such, he falls into the unclassified service as dictated by Article 10, § 2 of the 1974 Constitution." Delores Guillory argues that she "holds a confidential position to a principal executive department head (Melanie LeBouef - Director of the Department of Tourism and Culture), and, as such, she falls into the unclassified service as dictated by Article 10, § 2 of the 1974 Constitution." It is Eva Noel's contention "that, as the head of a principal executive department unanimously established by the Board of Aldermen at their

---

[2]Eight of the thirty-three employees named as defendants were dismissed from these proceedings because they were no longer employed by the City of Opelousas at the time of trial.

January 2011 regular meeting, [she] falls into the unclassified service as dictated by Article 10, § 2 of the 1974 Constitution."

## DISCUSSION

At the trial of this matter, the trial court was presented with testimony from numerous individuals as well as documentary evidence. This is a manifest error case. It is clear from reviewing the record, including the written Reasons for Judgment, that the trial court thoroughly analyzed the evidence before it. We see no reason to replicate the trial court's detailed analysis, and we find no manifest error in its ruling. Thus, we affirm and adopt the trial court's well-reasoned opinion as our own. Its opinion is incorporated by reference as Appendix "A" to this opinion.

## DECREE

For the reasons articulated above, we affirm the judgment of the trial court, adopt its opinion as our own, and incorporate its opinion by reference. Costs of this appeal are assessed against Roger Brown, George Gennuso, Delores Guillory, and Eva Noel.

**AFFIRMED.**

CIVIL SERVICE COMMISSION FOR
THE CITY OF OPELOUSAS

DOCKET NO. 11-C-5722-A

VERSUS

27TH JUDICIAL DISTRICT COURT

CITY OF OPELOUSAS, THROUGH ITS
MAYOR, DONALD CRAVINS, SR., AND
THE APPOINTING AUTHORITY, THE
BOARD OF ALDERMEN, ET AL

ST. LANDRY PARISH, LOUISIANA

## REASONS FOR JUDGMENT

The Civil Service Commission for the City of Opelousas (hereinafter "Civil Service")

has sued the City of Opelousas (hereinafter "City") in connection with the City hiring thirty-

three individuals in alleged unclassified positions in violation of the provisions of the Civil

Service Laws of Louisiana and the Civil Service Commission for the City of Opelousas.

The defendants are the City, the Mayor and Board of Aldermen, as well as the

individuals claimed to be subject to the Civil Service provisions of the Commission for the

City of Opelousas.[1]

The Civil Service System was originally designed to abrogate the spoil system under

which public employees are not selected for employment and promotion on the basis of

merit or qualifications for a position but as rewards for faithful, political activity and service,

so that the job holders and their families become economic serf of a particular political

organization and have to vote and work for the candidate of their faction regardless of the

character or qualifications of the candidate. *New Orleans Firefighters Association v. Civil

Service Commission*, 422 So.2d 402, 410 (La. 1982).

Because of the tumultuous history of Civil Service in Louisiana, detailed provisions

on Civil Service are included in our Constitution so that the merit system can be repealed

and amended only by a vote of the people, to protect against real or weakening

amendments and sabotaged by temporary majority vote of a spoil's minded and partisan

legislative body.

The prime objectives and purposes of the constitutionally created Civil Service

System are to insure that non-policy making, i.e. "classified" city employees, are:

---

[1] Eight of the thirty-three named individual defendants are no longer employees of the City and all parties agree they should be dismissed from these proceedings. Those individuals are Randesha Thomas, John Victorian, Allen Celestine, Elizabeth Landry, Arabella Minick, Shawanna Johnson, Chelvis Smith and Marietta Soileau.

094

1)  Competitively selected on the basis of merit, free from political influence; and

2)  Protected from discriminatory dismissal or treatment for religious or political reasons. *New Orleans Firefighters Ass'n Local 642, supra* and *Civil Service Commission of the City of New Orleans v. City of New Orleans*, 2002-1812, 854 So.2d 322 (La. 9/9/03).

A referendum and election to establish a Municipal Civil Service System for the City of Opelousas was conducted in 1961 and as a result of a favorable vote, Opelousas Ordinance 10 of 1962, as amended by Ordinance 11 of 1962, were enacted establishing the Opelousas Civil Service Commission.[2]

Code of Ordinances for the City of Opelousas, Section 7.9, specifically provided:

"Municipal Civil Service for the municipal employees included hereunder shall become effective as of May 1, 1962. The classified service shall include all regular employees of the City of Opelousas so employed as of May 1, 1962, including the heads of the various departments, inspectors, curators or all custodians of parks and museums, whose salaries or wages are paid solely out of the City on a regular wage or salary basis, or out of funds collected or derived from inspections and permits from the various City inspectors. The classified service shall not include the position of City attorney, City engineer, City auditor, the members of municipal boards or commissions, any elected officials or any other positions excluded from the classified service by Article 14, Section 15(G)(a), of the Louisiana Constitution (1921), which are now specifically included in the classified service by the provisions of this Section."

In 1974, Louisiana adopted a new Constitution and pertinent to this decision is Article 10, Section 2, which in pertinent part states:

"(B)  Unclassified Service. Unclassified service shall include the following officers and employees of the City and Civil Service:

(1)  Elected officials and persons appointed to fill vacancies in elected offices;

(2)  The heads of each principal executive department appointed by the Governor, the Mayor or the governing authority of the City;

---

[2]At the beginning of trial, the defendants' counsel advised the Court of their position that they do not concede that Opelousas has a valid Civil Service System in place. That issue, however, was addressed in the Court's pretrial and there was a specific stipulation that "the City of Opelousas was subject to the Louisiana Civil Service Laws." The Pretrial Order further provided that any objections to the Pretrial Order were to be filed with the Clerk, with notice to the Court, no later than five days after the service of the pretrial order. Service of the Order was made on October 26, 2012 and there were no objections made to the Pretrial Order and specifically to the stipulation that the City of Opelousas was subject to a Civil Service System until the day of trial which commenced on November 19, 2012, more than six days after service of the Pretrial Order. Based upon the stipulation and no timely objections made to the Pretrial Order this case has proceeded and the Court is deciding the case on the basis that the City of Opelousas is subject to the Civil Service System laws applicable in the State of Louisiana.

2

095

(7) One person holding a confidential position and one principal assistant, or deputy to an officer, board, commission or authority mentioned in Paragraph (1), (2), (4), or (5) above, except Civil Service Departments;

(10) Employees, deputies and officers of the legislature and officers of the ... Mayor and City attorney ..."

Persons not included in the unclassified service are in the classified service.

(Louisiana Constitution 1974, Article 10, Section 2 (A)).

All employees not defined as unclassified shall be considered as classified employees subject to Civil Service requirements.

Article 14, Section 9 of the 1974 Louisiana Constitution states in pertinent part:

"Upon the effective date of this Constitution, all officers and employees of the State and the cities covered hereunder who have status in the classified service shall retain said status and the position, class and rank that they have on such date and shall thereafter be subject to and governed by the provisions of this Constitution and rules and regulations adopted under the authority hereof."

Article 10, Section 15 of the 1974 Louisiana Constitution specifically provides in the second paragraph "nothing in this part shall permit the inclusion in local civil service of officials and employees who are listed in Section 2 of this Article."

In addressing the issues in this case and particularly whether or not the individual named employees are in classified or unclassified positions, this Court is guided by the fact that unclassified service is an exception to the general rule that all employees, other than the specific unclassified employees, are to be classified and subject to the Civil Service Rules and therefore the Court, by statutory interpretation is bound to strictly construe the provisions of law.

At the conclusion of the trial, the Court noted its opinion and judgment that the provisions of the 1974 Louisiana Constitution, in particular Article 10, Section 2 defining classified employees, superceded the provisions of Opelousas Ordinance 7.9 that included "heads of various departments, inspectors, curators or custodians ... as classified employees," and Opelousas Codified Ordinance 7.9 is in conflict with Article 10, Section 2 of the 1974 Louisiana Constitution as to who is a classified employee. The Court has ruled that the provisions of the 1974 Louisiana Constitution, Article 10, Section 2 (B), prevails over the local ordinance previously adopted by the City of Opelousas and the local

3

096

ordinances in conflict as to who is defined as classified employees (or more appropriately unclassified employees) is controlled by our 1974 Constitution.

The defendants allege that all of the remaining employed individuals are unclassified employees as defined in the 1974 Louisiana Constitution, Article 10, Section 2 (B), paragraphs (2), (7) and (10) or they are independent contractors and not employees.[3]

It is the contention of the defendants that after the removal of the eight employees who are no longer with the City of Opelousas and Keith Broussard, as an independent contractor, the remaining twenty-four employees are either heads of principal executive departments, assistants to the head of a principal executive department or an elected official, hold a confidential position to the head of a principal executive department or elected official, are employees of the Mayor's office or are independent contractors to the City and thus exempt from the Civil Service provisions as unclassified employees.

The first issue the Court is tasked with deciding is what is the "head of a principal executive department." The Court asked the question during the course of the trial as to what constituted a "principal executive department" and has received very little assistance from counsel on defining the term within the confines of this litigation.

The defendants, in their case-in-chief, presented Darryl Wagley who was charged by the Mayor to create an organizational plan for the City with the purpose of the plan attempting to delineate areas of responsibility of employees and the chain of command. To this end, Darryl Wagley prepared an organizational chart which was entered into evidence as part of Plaintiff's Exhibit 8.

Darryl Wagley testified he considered Civil Service in preparing his organizational form and chart but it was unclear to the Court whether the Opelousas Civil Service Commission was consulted in preparation of the organizational structure or what input, if any, they had. This chart shows that under the Mayor and Board of Aldermen is the office of Chief Administrative Officer which is headed by Laura Balthazar. The organizational chart shows all authority thereafter flows through her office. Supposedly one could argue that based upon this chart there is only one (1) principal executive department and that is

---

[3]All parties concur that Keith Broussard is an independent contractor and the Court also agrees and so finds.

4

the Office of the Chief Administrative Officer who is the only head of a principal executive department in an unclassified position. Such a simple approach would fail to consider the significance and duties of the other departments.

The City and employees' counsel argue that the powers to appoint the department heads rest with the Mayor and the Board of Aldermen and they may establish whatever departments they want as provided for in La. R.S. 33:362(C), which provides in part:

> "Any department of a municipality ... shall be created, abolished, merged or consolidated by the Board of Aldermen, upon written recommendation from the Mayor."

Section 362(C) speaks to departments; however, it does not define or differentiate between a supervisory department or an executive department much less as to "principal executive department." To accept that the Mayor and Board of Aldermen can designate any department as a "principal executive department" and that department head, together with an assistant and a confidential employee, are unclassified employees outside the scope of Civil Service is as erroneous as saying that there is only one executive department based upon the original chart introduced as part of Plaintiff's Exhibit No. 8. Naming a department as a "principal executive department" does not make it necessarily so.

To determine if a department established by the Mayor and Board of Aldermen is in truth and in fact a principal executive department requires a determination of what constitutes a "principal executive department" in a municipality. An analysis of the Constitution and functioning of a department is necessary to determine if in fact it is an executive department and then if it rises to a principal executive department.

Neither this Court or counsel found any legislation or jurisprudence on point defining or outlining the meaning of "principal executive department."

The Court has sought guidance from dictionaries, particularly Black's Law Dictionary, as well as Random House Webster's Collegiate Dictionary, 1991 Edition.

Black's defines "department" as a "principal branch of government." "Principal" is defined as "one who authorizes another to act on his behalf such as an agent," and Random House defines "principal" as "of the first or highest rank."

5

098

"Executive" is defined as "a corporate officer at the upper levels of management," by Black's and Random House states that "an executive is a person who has administrative or supervisory authority in an organization."

Based on these meanings, a "principal executive department" of a municipality would appear, to the Court, to be necessary and essential to the operations of the City. Not every department can be or should be considered as a principal executive department. If the City, in so establishing departments, designates each department created as the highest or of the first order in order to avoid the efficacy of the Civil Service System, that cannot and should not be allowed.

Usually, in any organization, the executives are those individuals who are charged with both establishing and carrying out policies and directing others to do the work necessary to accomplish whatever goals are set or do the things necessary to carry on the business of the organization.

Usually the principal executives are the ones that possess the most authority and discretion and in most instances receive compensation commensurate with their duties.

Historically, the City of Opelousas recognized four departments, Parks and Recreation, Public Works, Code Enforcement and Civil Service. The director of the Civil Service Department is, by law, a classified employee.

The Board of Aldermen adopted a resolution on January 11, 2011, declaring as principal executive departments Code Enforcement, Tourism and Culture, Parks and Recreation, Civic Center, Purchasing Supervisor, Water Waste Service Director, Fleet Management and Public Works.[4]

Code Enforcement, Civic Center Director, Purchasing Supervisor, Waste Water Service Director and Fleet Management are not, in the Court's opinion, principal executive departments of the City of Opelousas. These departments perform more of a ministerial function.

Code Enforcement carries out the rules, regulations and ordinances adopted by the Board of Aldermen, issues permits, manages the flood plan for the City and collects fines. Code Enforcement does not make or create policy. Further, the Director of Code

---

[4]The police and fire departments are excluded because they are governed by a separate set of Civil Service Rules and Regulations.

6

099

Enforcement reports, according to the organizational chart, to the Chief Administrative Officer and not the Mayor or Board of Aldermen.

The Civic Center Director books and supervises the operations of a City leased property which provides a measurable benefit to the City but cannot be said to be of the first or highest rank department for the City.

In connection with the Purchasing Supervisor, he is that, a supervisor. The party who holds the position at this time, Willie Washington, is not a party to these proceedings because he is considered as a classified employee, testified that he is supervised by the Chief Administrative Officer, Laura Balthazar, and considers himself only a supervisor and had so instructed the Mayor's representative, Darryl Wagley, of that position. The Purchasing Supervisor is charged with seeing that the supplies and items necessary to operate the City are acquired when needed. There is nothing in the office to suggest that the Purchasing Supervisor has any executive authority to perform his duties other than to supply other departments with required materials.

The Waste Water Service Director, Patricia Barnaba, is also, in this Court's opinion, not a principal executive department director. She also is listed as a classified employee. She oversees the Waste Water and Sewerage Department and is considered no more than a supervisor. Patricia Barnaba testified at the trial that she reports to Kim Fontenot, the Public Works Director, and that she has never been considered nor paid as a department head.

The Court also considers the Fleet Manager as a supervisor and not the head of a principal executive department. The testimony of Roger Brown was that he was originally hired to run the mechanic shop and was promoted to Fleet Manager at a later date. He further advised that he is supervised by Chief Administrative Officer Laura Balthazar and reports to her. Again, the Court is of the opinion that the position of Fleet Manager does not rise to the level of a principal executive department. A Fleet Manager can be and is considered a department of the City but the fact that it is a department does not in and of itself constitute it as a principal executive department.

7

Those five (5) departments, based upon their intrinsic duties and history are not principal executive departments. The Court finds the following to be principal executive departments: Tourism and Culture, Parks and Recreation and Public Works. In addition, the Court also finds that based upon the structure of the City that the Office of the Chief Administrative Officer by its very title as well as its job obligations and responsibilities constitutes a principal executive department of the City.

Based upon this finding, the Court determines that Laura Balthazar, as the Chief Administrative Officer, Melanie LeBouef, as the Director of Tourism and Culture, and Kim Fontenot, as the Director of Public Works are unclassified employees as set forth in Article 10, Section 2(B)(2).[5]

Furthermore, the Court, having made the determination that Code Enforcement, Civic Center Director, Purchasing Supervisor, Waste Water Services Director and Fleet Manager not being principal executive offices, the following individuals, either as the director and/or supervisors of those departments, together with their named assistants or employees, namely Gidget Jolivette Williams, Julia Welch, Roger Brown, George Gennusso and Eva Noel are not unclassified employees as set forth under Article 10, Section 2(B)(2) of the 1974 Louisiana Constitution.

In connection with the Office of Tourism and Culture, the Court finds that such department is a principal executive department and that Melanie LeBouef qualifies as the head of that department and is therefore an unclassified employee under the provisions of the 1974 Constitution, Article 10, Section 2(B)(2). In connection with the other employees of that department, the Court finds that Armisha Arceneaux has been appointed as the assistant to Melanie LeBouef based upon the testimony presented at trial and she is also considered an unclassified employee under the provisions of Article 10, Section 2(7).

Although there was testimony that Delores Guillory was confided in by Melanie LeBouef, the director of the Tourism and Culture Department, the Court finds that there was a lack of sufficient evidence to indicate that in fact there was a position of

---

[5]Although Parks and Recreation has been designated by the Court as a principal executive department, there is no evidence or testimony as to who is head of that department. Ken Vidrine testified he was head of the Parks and Recreation Department but he retired on September 31, 2011.

8

confidentiality. Delores Guillory is slotted as the Director of the Museum which comes under the direction of the Department of Tourism and Culture and there is nothing that indicates any specific or special reason for her to be designated as a person in a confidential position. Further, she cannot hold the unclassified position as an assistant because the Court has found that Armisha Arceneaux is already in that position.

Furthermore, the Court finds that the other employees of the Office and Tourism and Culture, namely Joseph Serie, Joe Citizen, Florence Freeman, Angela Doomes, Rosa Myers, Patricia Richard, Meegan Taylor Robin and Chandra Kennerson do not qualify as unclassified employees under Article 10, Section (B)(2) of the 1974 Louisiana Constitution.

The Court also is of the opinion that Angela Francis, who testified that she is a receptionist under the direction of the City Clerk, Karen Frank, is considered a classified employee, not meeting an exception set forth under Article 10 of the 1974 Constitution.

The individual employees have further made an argument to the Court that even if they do not qualify as a department head or as an assistant or a confidential party to a department head, they still qualify as representatives of the Mayor's office.

Allegations of unclassified status under Article 10, Section 2(B)(10) includes all of the individuals who have not been considered as qualified heads of a principal executive department as well as John Lamke, Raymond Duplechain, Donald Francis, Darryl Wagley and Marie Renaud.

The argument of counsel that the individual employees who do not fall under one of the exceptions set forth in Article 10, Section 2 (B) (1), (2) or (7) of the 1974 Constitution, are still members or employees of the Office of the Mayor and are excluded from Civil Service is not persuasive.

The Court has reviewed the cases of *Smith v. Division Administration*, 362 So.2d 1101, which cited and affirmed the case of *State In Re: Murtagh v. Department of Civil Service*, 42 So.2d 65 (La. 1949) wherein the court stated as follows:

> "This court interpreted the various employees of the Mayor to include only those employees which are generally accepted as the office force of the Mayor and not employees of other departments placed under his supervision."

The thrust of the *Murtaugh* opinion was that only the personal staff of the Mayor, his "retinue" was intended by the phrase.

9

In review of all of the evidence, the Court is of the opinion that Darryl Wagley and Marie Renaud are in fact members of the Mayor's staff, directly reporting to the Mayor in performing special projects and as such are part of the Mayor's retinue and are considered unclassified employees as per Article 10, Section 2 (10).

As it relates to John Lamke, his testimony was that he was appointed as the Community and Economic Development District and Grant Director but that position or department was never voted on, recognized and/or created by the Board of Aldermen as a principal executive office. The Court is of the opinion that office would not qualify as a principal executive office. Furthermore, John Lamke testified in the second day of trial that Raymond Duplechain fell under his department and he was the supervisor of Raymond Duplechain.

Based upon this testimony and evidence, the Court considers neither John Lamke or Raymond Duplechain as unclassified employees.

Furthermore, Laura Balthazar testified that John Lamke was her assistant; however, Laura Balthazar also testified that her assistant was a Civil Service Employee, Charlotte McClendon; therefore, under Article 10, Section 2 (B)(7) of the 1974 Constitution, a department head can have only one assistant and therefore the Court would require the City to choose to designate either Charlotte McClendon or John Lamke as the assistant to the Chief Administrative Officer. Until that selection is made, John Lamke should be considered in a classified employee category.

The Court finds that none of these employees who serve in any of these departments other than Darryl Wagley and Marie Renaud qualify for an unclassified position as an employee of the Office of the Mayor.

As to Kim Fontenot, as the head of the Department of Public Works, the Court is of the opinion, and it appears to be concurred in by the parties, that the Public Works Department is a principal executive department and therefore Kim Fontenot would be an unclassified employee under the applicable constitutional provisions.

10

103

Last is the issue of Donald Francis. Donald Francis is employed by the City of Opelousas but he is assigned to work with the Chief of Police, Perry Gallow. Donald Francis indicated and it was represented to the Court that he occupies a confidential position with the Chief.

Based upon the testimony that was presented, the Court finds that Donald Francis occupies a confidential position with the Chief of Police for the City of Opelousas. Plaintiff in this matter maintains that the Chief of Police is not covered by the Municipal Civil Service provisions in view of the fact that the police have their own Opelousas Fire and Police Civil Service.

As correctly pointed out, the Chief is an elected person who is an unclassified employee of the City under the provisions of Article 10, Section 2 (B)(1) of the 1974 Constitution and the Court having found that Donald Francis occupies a confidential position with the Chief, who is elected, then he falls under an unclassified position by virtue of Section (2)(B)(7) of Article 10 of the 1974 Constitution.

As a recap in this matter, the Court finds that of the named defendants herein, the following should be considered unclassified employees, together with the reason the Court has found them as such:

1.  Keith Broussard - independent contractor;
2.  Laura Balthazar - Article 10, Section 2(B)(2);
3.  Darryl Wagley - Article 10, Section 2(B)(10);
4.  Marie Renaud - Article 10, Section 2(B)(10);
5.  Donald Francis - Article 10, Section 2(B)(7);
6.  Melanie LeBouef - Article 10, Section 2(B)(2);
7.  Armisha Arceneaux - Article 10, Section 2(B)(7)
8.  Kim Fontenot - Article 10, Section 2(B)(2).

The Court finds that the following employees should be classified employees subject to the rules and regulations of the Civil Service Commission of the City of Opelousas:

1.  Gidget Jolivette Williams;
2.  Julia Welch;
3.  Eva Noel;
4.  Joseph Serie;
5.  Meegan Taylor Robin;
6.  Delores Guillory;
7.  Angela Francis;
8.  Joe Citizen;
9.  Roger Brown;
10. George Gennuso;
11. Florence Freeman;
12. Angela Doomes;
13. Rosa Myers;

11

14. Patricia Richard;
15. Chandra Kennerson;
16. John Lamke;
17. Raymond Duplechain.

Costs in this matter are assessed seventy (70%) percent to the defendants and thirty (30%) percent to the plaintiff.

Counsel for the plaintiff will prepare a judgment in accordance with these Reasons and submit to opposing counsel under the provisions of Uniform District Court Rule 9.5, thereafter filing the judgment with the Clerk of Court for presentation to the undersigned for execution.

THUS DONE AND SIGNED at Opelousas, St. Landry Parish, Louisiana on this $\partial 6^{\text{th}}$ day of February, 2013.

_____
JAMES P. DOHERTY, JR.
DIVISION A

St. Landry Parish Clerk Of Court's Office
Filed Feb. 26, 2013
By, Clerk

12